## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **RICHARD WADE KENDRICK,** | ) | |
| | ) | **Civil Action No. 7:21cv00141** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **ALBEMARLE COUNTY,** *et al.*, | ) | **By:   Hon. Thomas T. Cullen** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |

Plaintiff Richard Wade Kendrick, a Virginia inmate proceeding *pro se,* filed this civil action under 42 U.S.C. § 1983, against a state court judge, two state prosecutors, Albemarle County, and the Albemarle County Executive[1]. Kendrick paid the filing fee in full and notified the defendants of this action on his own. The defendants have moved to dismiss this action and, having reviewed the pleadings, the court will grant their motions.

### I.

On April 13, 2017, a grand jury indicted Kendrick on eight criminal offenses, and the Albemarle County police subsequently arrested him. Defendant Amanda Galloway, an Assistant Commonwealth's Attorney, prosecuted the cases. Defendant Robert Tracci[2] was the Albemarle County Commonwealth's Attorney at the time. Kendrick asked for, and was granted, separate trials for the cases. Four of the cases went to trial in October of 2017, and

---

[1] Kendrick names "Jeff Richardson Administrator" as a defendant, but Albemarle County has an executive form of government, and Jeff Richardson is the Albemarle County Executive. *See* Albemarle County, County Executive Staff, https://www.albemarle.org/government/county-executive/county-executive-staff (last visited January 26, 2021). Under Virginia Code, the county executive is the administrative head of the county. *See* Va. Code § 15.2-516.

[2] Kendrick named "Robert Thaccee" as a defendant; his name is "Robert Tracci."

Kendrick was found guilty in each case. Prior to Kendrick's sentencing hearing and before the four remaining cases went to trial, Kendrick sent a letter to the Circuit Court alleging that his defense attorney allowed the Commonwealth's Attorney to poison Kendrick's Pepsi. Upon receiving this letter—and in light of psychological issues noted in Kendrick's criminal history—the court ordered Kendrick to be evaluated to determine if he was competent to assist counsel in his defense. After determining that Kendrick was competent, the court set the four untried cases for trial during a status hearing on April 11, 2018. On June 25, 2018, Kendrick was tried and found guilty in two of the cases. On July 5, Kendrick was tried and found guilty on one of the remaining cases, and the final case was dismissed.

Kendrick claims that the four cases tried after January 12, 2018, violated his right to a speedy trial under the Sixth Amendment. All of the other claims in Kendrick's complaint stem from his speedy trial rights allegedly being violated. Kendrick seeks $120 million in compensatory damages, $120 million in punitive damages against Judge Higgins, $120 million in punitive damages against Assistant Commonwealth's Attorney Galloway and then-Commonwealth's Attorney Tracci, and $500 million in punitive damages against Albemarle County. He also seeks release from prison.[3]

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[3] Although he does not explicitly request this relief, Kendrick alleges that he is "illegally imprisoned." (ECF No. 1-1, at 11.) The court will therefore address whether he may seek immediate release in this action.

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736,

- 3 -

738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

### A.

"When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), *see generally*, *Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions). Insofar as Kendrick challenges the validity of his conviction and seeks immediate release from incarceration, his claim is thus not cognizable in a § 1983 action.

### B.

Further, to the extent Kendrick seeks damages and declaratory relief, his claims are barred. "When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see Wilkinson*, 544 U.S. at 81-82 (recognizing § 1983 claims for declaratory relief are barred under *Heck* if success of the claims would necessarily demonstrate the invalidity of the prisoner's confinement without favorable termination). Because Kendrick

has neither alleged nor demonstrated that his underlying conviction has been invalidated, his claims are barred by *Heck*.

## IV.

Even if Kendrick's claims were not barred by *Heck*, however, Kendrick has failed to state a cognizable § 1983 claim against the defendants.

Kendrick's claims against Judge Higgins fail because she is entitled to absolute immunity. Judges are absolutely immune from suits under § 1983 for acts committed within their judicial discretion.[4] *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). "Absolute judicial immunity exists 'because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.'" *Lesane v. Spencer*, No. 3:09CV012, 2009 U.S. Dist. LEXIS 114247, at *6 (E.D. Va. Dec. 8, 2009) (quoting *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972) (citations omitted), *overruled on other grounds by Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995)). Judges are entitled to immunity even if "the action [they] took was in error, was done maliciously, or was in excess of [their] authority . . ." *Stump*, 435 U.S. at 356. Kendrick's allegations against Judge Higgins describe actions taken within her judicial discretion. Accordingly, Judge Higgins is entitled to judicial immunity.

Prosecutorial immunity bars Kendrick's claims against Assistant Commonwealth's Attorney Galloway and then-Commonwealth's Attorney Tracci. *See Imbler v. Pachtman*, 424 U.S.

---

[4] Only two exceptions apply to judicial immunity: (1) nonjudicial actions and (2) those actions, "though judicial in nature, taken in complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citation omitted). Neither exception applies here.

409, 430 (1976). Prosecutorial immunity extends to actions taken while performing "the traditional functions of an advocate," *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (citations omitted), as well as functions that are "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430. To determine whether a specific action falls within the ambit of protected conduct, courts employ a functional approach, distinguishing acts of advocacy from administrative duties and investigative tasks unrelated "to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citation omitted); *Carter v. Burch*, 34 F.3d 257, 261–63 (4th Cir. 1994). Absolute immunity protects those "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and those which occur in the course of his [or her] role as an advocate for the State." *Buckley*, 509 U.S. at 273.

Kendrick fails to plead facts plausibly suggesting that the prosecutors' actions were taken outside of their role as advocates for the Commonwealth in his criminal prosecution. *See Imbler*, 424 U.S. at 430 (holding that prosecutorial immunity extends to prosecutor's actions "in initiating a prosecution and in presenting the State's case"); *Black v. Hammers*, No. 3:19cv582, 2019 U.S. Dist. LEXIS 172019, at *9, (S.D.W. Va. Sept. 11, 2019), *adopted*, 2019 U.S. Dist. LEXIS 170879 (S.D.W. Va. Oct. 2, 2019) (applying prosecutorial immunity where plaintiff accused defendants of interfering with his right to a speedy trial); *Kenny v. Bartman*, No. 16-2152, 2017 U.S. App. LEXIS 16640, at *7 (6th Cir. May 19, 2017) (dismissing a claim that prosecutors violated the plaintiff's right to a speedy trial, because the prosecutor's actions were "well within the scope of [the prosecutors'] prosecutorial duties."); *McRavion v. Cline*, No. 5:18cv53-FDW, 2019 U.S. Dist. LEXIS 136915, at *21 (W.D.N.C. Aug. 14, 2019) (finding that

plaintiff's claim for a violation of his Sixth Amendment right to a speedy trial was precluded by absolute prosecutorial immunity); *Munsey v. Sadler*, No. CIV.A. 1:12-0097, 2012 U.S. Dist. LEXIS 190598, at *11 (S.D. W. Va. July 13, 2012), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 151414 (S.D. W. Va. Oct. 24, 2014) (finding that prosecutors were immune from a claim that they improperly indicted the plaintiff and failed to provide him with a speedy trial). Thus, prosecutorial immunity bars Kendrick's claims against the prosecutors.

Finally, Kendrick also fails to state a claim against Albemarle County and the Albemarle County Executive. Under § 1983, counties and cities are considered to be municipalities, and Albemarle County is considered to be a municipality in this case. *See Swaringen v. Ariail*, No. C/A: 4:10-2825-RBH-TER, 2011 U.S. Dist. LEXIS 56031, at *12–13 (D.S.C. Apr. 28, 2011). The Albemarle County Executive is an official of Albemarle County. *Id.* Under *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 694 (1978), a municipality may be liable under § 1983 for the violation of a plaintiff's constitutional rights, but "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell*, 436 U.S. at 694); *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir.1984). "The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of employees, absent an official policy or custom which results in illegal action." *Monell*, 436 U.S. at 694; *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir.1982). Therefore, a plaintiff who asserts a § 1983 claim against a municipality for acts done by a municipal official or employee is obliged to identify a municipal policy, or custom that caused the plaintiff's injury. *See Bd. of Cnty. Comm'rs*, 520 U.S.

at 403. In this case, Kendrick does not describe a municipal policy or custom that caused his alleged injury. Accordingly, Kendrick fails to state a cognizable claim against Albemarle County and the Albemarle County Executive.

## VI.

For the reasons discussed, the court will grant defendants' motions to dismiss.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of January, 2022.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE